**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:24-CR-22 CCB** |
| | ) | |
| **ANTONIO CURIEL** | ) | |
| **Defendant.** | ) | |

# MOTION TO SUPPRESS

Antonio Curiel, by counsel, now moves to suppress all evidence, and the fruits thereof, seized during the search of the vehicle which he was operating on March 20, 2024. He asserts the following in support of this motion.

Mr. Curiel was operating a motor vehicle travelling eastbound on Interstate 80 near the Knute Rockne Toll Plaza on March 20. 2024. A police officer, Sergeant Wallace, targeted the vehicle for a traffic stop because the vehicle bore a California license plate which had been scanned while travelling on: I-70 near Grand Junction Colorado, on March 18, 2024, at 10:17 a.m. (MDT); I-80 near Lincoln, Nebraska, on March 19, 2024, at 10:28 a.m. (CDT); I-80 outside Davenport, Iowa, on March 19, 2024, at 5:54 p.m. In addition, the vehicle had been scanned at 1:53 a.m. on March 20, 2024, in the parking lot of a Baymont Hotel in Portage Indiana.

Sgt. Wallace conducted a traffic stop after following the vehicle for approximately four (4) miles. He advised Mr. Curiel that he had paced Mr. Curiel at 77 miles per hour and requested a driver's license and registration from Mr. Curiel and identification from two female passengers. Mr. Curiel provided a California identification card and a driver's license from Mexico to the officer and advised that the vehicle was a rental. The rear seat passenger, Esmeralda Curiel, Mr. Curiel's sister, showed the officer the rental agreement for the vehicle which was recorded on her cell phone.

The officer immediately advised that he would issue a warning ticket to Mr. Curiel. Sgt. Wallace advised Mr. Curiel to sit in the front passenger seat of the marked police car. Antonio Curiel questioned why the officer wanted him to sit in the officer's vehicle. Sgt. Wallace informed Antonio that this was his common practice. Antonio got out of his vehicle and advised that he would like to stand outside the police vehicle near the front passenger door. Sgt. Wallace did not object. Seargeant Wallace then engaged Antonio in conversation unrelated to the traffic stop.

Thereafter, Sgt. Wallace delayed the process of writing a warning ticket to await the arrival of a narcotics canine and to engage in additional questioning of Mr. Curiel to develop individualized, reasonable suspicion, and/or obtain consent from Mr. Curiel, to search the vehicle.

Subsequently, Deputy Samuelson arrived with a narcotics K9. Deputy Samuelson waited in his vehicle for approximately three and one-half (3 1/2) minutes while Sgt. Wallace questioned Mr. Curiel regarding matters unrelated to the traffic stop and attempted to secure consent to search the vehicle. Mr. Curiel denied such consent.

After Mr. Curiel denied consent to search the vehicle, Sgt. Wallace communicated with Deputy Samuelson in a manner unknown to Mr. Curiel. The gist of the communication was that Deputy Samuelson should request consent to search the vehicle from the rear seat passenger, Esmeralda Curiel, as she was the renter of the vehicle.

Deputy Samuelson then got out of his vehicle and approached the Curiel vehicle. He then asked Esmeralda whether the vehicle contained any narcotics, guns, or other contraband. He asked for consent to search the vehicle and advised her that she had the right to refuse to consent. Body worn camera footage from Deputy Samuelson shows Esmeralda did not consent to the search of her rental car. Samuelson said, “It’s a yes or no, it’s your choice though.” (Bates 016 at 4:14) She did not provide a direct answer -- neither a “yes” or “no” – and instead indicated she understood Samuelson’s explanation of her rights. She said, “Oh, OK. Yeah,” and then immediately transitioned to discussing the front-seat passenger’s identification card. Esmeralda never answered Samuelson’s question regarding consent.

Samuelson appears to have understood she did not consent because he interrupted her when she spoke about the front-seat passenger's ID and said, "OK, so I'm just going to run my dog around the outside of the car. So, I'll just have you guys hop out, OK?"

The two women, Esmeralda and Jimena Llanes, Antonio's girlfriend, got out of the vehicle as directed. They showed the officer that they were not armed by lifting their shirts as he had requested. A dog sniff followed and the dog alerted. Mr. Curiel was advised that the dog alerted and he was asked additional questions. The vehicle was searched and cocaine was seized.

The evidence seized from the warrantless search and Antonio Curiel's statements which followed the dog sniff and alert should be suppressed because the search of the vehicle lacked probable cause and violated the Fourth Amendment to the United States Constitution. The traffic stop was prolonged unnecessarily while the officers attempted to secure consent to a search and/or to develop reasonable suspicion of ongoing criminal activity. Neither effort was successful. The canine sniff does not provide probable cause in this case because the traffic stop was unreasonably prolonged to permit such a sniff. Mr. Curiel's statements are the fruit of the illegal search

and seizure and should be suppressed also.

Wherefore, Antonio Curiel, by counsel, requests that the court hold a hearing on this motion and at the conclusion of the hearing suppress both the evidence seized and the statements made by Antonio Curiel.

Dated: August 9, 2024

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By: s/ David E. Vandercoy
David E. Vandercoy, Staff Attorney
130 S. Main Street, Suite 300
South Bend, IN 46601
Phone: (574) 245-7393
Fax: (574) 245-7394
eMail: david_vandercoy@fd.org