UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 3:24-CR-00022-CCB-SJF

ANTONIO CURIEL

**OPINION AND ORDER**

On April 10, 2024, Defendant Antonio Curiel was indicted for knowingly and intentionally possessing with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)(II). [DE 8.] Pending before the Court is Mr. Curiel's motion to suppress evidence seized during the search of Mr. Curiel's vehicle. [DE 21.] Mr. Curiel also requests that the Court hold an evidentiary hearing on his motion. [*Id.*] For the reasons stated herein, the Court denies Mr. Curiel's motion.

**BACKGROUND**

The following background facts are as alleged by Mr. Curiel in his motion to suppress [DE 21] and in his reply in support of his motion [DE 34.] Mr. Curiel alleges that on March 20, 2024, after following Mr. Curiel's vehicle for approximately four miles and when Mr. Curiel was driving over the 70 mph speed limit, police officer Sergeant Wallace of the Laporte County Sheriff's Department conducted a traffic stop. [DE 21 at 1-2; DE 34 at 1-2.] Mr. Curiel provided a California identification card and a driver's license from Mexico, and informed Sgt. Wallace that the vehicle was a rental. [DE 21 at 2.] Sgt. Wallace "immediately advised" that he would issue a warning ticket to Mr. Curiel, and advised Mr. Curiel to sit in the front passenger seat of the marked police car, informing Mr. Curiel that this was common practice [*Id.*] Mr. Curiel got out of the vehicle and said that he would like to stand outside the police vehicle near the front passenger door. [*Id.*] Sgt. Wallace did not object, and had a conversation with Mr. Curiel "unrelated to the traffic stop." [*Id.*]

Deputy Samuelson arrived with a narcotics canine and waited in his vehicle for three and a half minutes while Sgt. Wallace allegedly "questioned Mr. Curiel regarding matters unrelated to the traffic stop and attempted to secure consent to search the vehicle." [*Id.* at 3.]  After unsuccessfully obtaining consent for the dog to sniff the vehicle from Mr. Curiel and his sister, who was a passenger in the vehicle, the narcotics dog performed a sniff and the dog alerted.  [*Id.* at 3-4.]  Mr. Curiel was advised that the dog alerted, and he was asked additional questions.  [*Id.* at 4.] Mr. Curiel's vehicle was searched, and cocaine was seized.

Mr. Curiel argues that the traffic stop lacked probable cause and that Sgt. Wallace unreasonably prolonged the traffic stop in violation of the Fourth Amendment.  Mr. Curiel now moves to suppress the fruits of the alleged unlawful search and seizure, including the evidence seized from his vehicle and Mr. Curiel's statements following the dog alert.

## DISCUSSION

A.  Request for evidentiary hearing

Evidentiary hearings to resolve a motion to suppress are not automatically required.  *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007).  The Court only needs to conduct an evidentiary hearing "when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) (upholding district court's denial of evidentiary hearing where district court only relied on defendant's version of events surrounding the search and other facts that defendant did not contest).  Mr. Curiel, as the party requesting the hearing, bears the burden of showing that there are disputed issues of material fact that require an evidentiary hearing.  *See United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988). "A disputed issue only warrants an evidentiary hearing, however, if the difference in facts is material, that is, only if the disputed fact makes a

difference in the outcome." *United States v. Juarez*, 454 F.3d 717, 720 (7th Cir. 2006) (internal quotations and citation omitted).

Mr. Curiel's briefing on the motion to suppress does not identify any specific "material factual dispute" requiring resolution through an evidentiary hearing.  *See McGaughy*, 485 F.3d at 969. In resolving of Mr. Curiel's motion, the Court only needs to rely upon Mr. Curiel's version of events surrounding the traffic stop and other facts Mr. Curiel does not contest. Since the Court does not need to resolve any issues of disputed fact in reaching its decision on the motion, a hearing is not required. *See Villegas*, 388 F.3d at 324.

B.  The traffic stop

Mr. Curiel first challenges the lawfulness of Sgt. Wallace initiating the traffic stop, arguing that "[t]his was a drug investigation that was attempting to develop probable cause for a stop and possible search for contraband." [DE 34 at 2.] Mr. Curiel alleges that Sgt. Wallace tracked Mr. Curiel's vehicle for approximately four miles when Sgt. Wallace finally pulled over Mr. Curiel. [DE 21 at 2.] Mr. Curiel then alleges in his reply brief in support of his motion to suppress that "[u]nlike most traffic stops, the investigation as to the SUV driven by Mr. Curiel began long before the SUV was stopped *for going slightly over the 70 mph speed limit* on the toll road." [DE 34 at 1-2] (emphasis added).

Traffic stops are permissible under the Fourth Amendment so long as the officer has probable cause to believe a traffic violation occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). "Probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense" *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (citation and quotations omitted). Traffic stops "require only reasonable suspicion of a traffic violation[.]" *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021).

3

Mr. Curiel does not allege any facts to demonstrate that Sgt. Wallace lacked reasonable suspicion to believe that Mr. Curiel committed a traffic violation. To the contrary, Mr. Curiel admits that he was going over the speed limit on the toll road. [DE 34 at 1-2.]   Mr. Curiel instead argues that the traffic stop was unlawful because of Sgt. Wallace's alleged subjective intent for seizing Mr. Curiel.  Mr. Curiel argues that Sgt. Wallace "targeted" Mr. Curiel's vehicle and followed it for a few miles because the vehicle had a California license plate, it had been scanned in various states in the days prior to the traffic stop, and that this was a "drug investigation that was attempting to develop probable cause for a stop and possible search for contraband."  [DE 21 at 1-2; DE 34 at 1-2.] But the Supreme Court held that an officer's "actual motivations" and "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813.  Accordingly, Mr. Curiel fails to demonstrate that Sgt. Wallace lacked reasonable suspicion to believe that Mr. Curiel committed a traffic violation when he initiated the stop of Mr. Curiel.

C.   Alleged prolonging of traffic stop

Mr. Curiel next argues that, after Sgt. Wallace stopped Mr. Curiel's vehicle, Sgt. Wallace delayed the process of writing a warning ticket to await the arrival of a narcotics canine, to develop individualized reasonable suspicion, and/or to obtain consent from Mr. Curiel to search the vehicle. [DE 21 at 2.]  In Mr. Curiel's reply, he emphasizes that, in ruling on his motion to suppress, "[w]hat is relevant to the Court's consideration is the added delay and the prolonging of the stop so that an officer with a canine trained to perform a dog sniff of the vehicle for the presence of drugs could arrive at the scene and perform a dog sniff." [DE 34 at 2.] Mr. Curiel goes on to allege:

> Here, Sgt. Wallace prolonged the stop by asking Mr. Curiel and the passengers a number of questions wholly unrelated to a stop for a speeding written warning.  Sgt. Wallace discussed Mr. Curiel's travel plans, where he was going, where he was staying, who Mr. Curiel was traveling with and their relationship to him. Mr. Curiel discussed that the cousins in Massachusetts were planning to move to California. Again, these matters were not necessary for writing a written warning for speeding.

[DE 34 at 2-3.]

A traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket." *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015). "A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of a driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). "Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." *Id.* "If there is no reasonable suspicion of criminal activity, a traffic stop can only last as long as it takes to 'address the traffic violation that warranted the stop' and 'attend to related safety concerns.'" *United States v. Walton*, 827 F.3d 682, 687 (7th Cir. 2016) (quoting *Rodriguez*, 575 U.S. at 355)). An officer may make unrelated inquiries to occupants of a lawfully seized vehicle so long as they do not prolong the stop. *Id.* (citing *Arizona*, 555 U.S. at 333)). An officer may also legitimately ask a driver to step out of his car, even without any particularized suspicion, and sit in his patrol car. *United States v. Lewis*, 920 F.3d 483, 492 (7th Cir. 2019) (citing *United States v. Baker*, 78 F.3d 1241, 1244 (7th Cir. 1996)). Asking about travel matters is also permissible. *Id.*

Taking Mr. Curiel's undisputed allegations as true, he fails to sufficiently allege any facts to support his contention that Sgt. Wallace impermissibly prolonged the traffic stop. The only asserted "unrelated" questions Sgt. Wallace allegedly asked Mr. Curiel concerned Mr. Curiel's travel plans, specifically "where he was going, where he was staying, who Mr. Curiel was traveling with and their relationship to him." [DE 34 at 2.] The Seventh Circuit held that travel-plan questions ordinarily fall within the mission of a traffic stop. *United States v. Cole*, 21 F.4th 421, 429 (7th Cir. 2021). As the Seventh Circuit explained, "travel-plan questions supply important context for the violation at hand" and may also "inform an officer's assessment of roadway safety concerns beyond the immediate violation." *Id.* Further, "[a]t a more general level, travel plans are typically related to the purpose of a

traffic stop because the motorist is traveling at the time of the stop." *Id.* Mr. Curiel does not allege

that Sgt. Wallace asked any non-travel related questions, or that the questions regarding Mr. Curiel's

travel plans came after Sgt. Wallace completed the mission of the traffic stop. Without more, the

Court cannot say that Sgt. Wallace violated Mr. Curiel's Fourth Amendment rights by impermissibly

prolonging the traffic stop by asking Mr. Curiel about his travel plans when Mr. Curiel's rental

vehicle had been scanned in several states prior to the traffic stop, and Mr. Curiel was traveling with

a California identification card and driver's license from Mexico.

Since Mr. Curiel has failed to show that the traffic stop was unlawful when the narcotics dog

performed a sniff of Mr. Curiel's vehicle, the Court need not decide whether Sgt. Wallace or Deputy

Samuelson had independent reasonable suspicion of criminal activity. *See Lewis*, 920 F.3d at 491 ("It

is well-established a dog sniff of a vehicle's exterior only for illegal drugs *during* a lawful stop for a

traffic violation does not infringe Fourth Amendment rights, even absent reasonable suspicion of

drugs.") (emphasis in original).

## CONCLUSION

Accordingly, Mr. Curiel fails to demonstrate that Sgt. Wallace lacked probable cause when he

initiated the traffic stop, or that Sgt. Wallace impermissibly prolonged the traffic stop in violation of

Mr. Curiel's Fourth Amendment rights. Mr. Curiel's motion to suppress [DE 21] is hereby

**DENIED**. Mr. Curiel's jury trial and final pre-trial conference dates will be set by separate order.

SO ORDERED.

October 8, 2024

　　　/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT